IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3144-FL

| | |
|---|---|
| JAMES R. GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ALVIN KELLER, JR., ROBERT C. ) | |
| LEWIS, MARSHALL PIKE, and ) | |
| DENNIS ROWLAND, ) | |
| ) | |
| Defendants. ) | |

The matter is before the court on the motion for summary judgment (DE # 32) pursuant to Federal Rule of Civil Procedure 56 filed by defendants Secretary of the North Carolina Division of Adult Correction ("DAC")[1] Alvin Keller, Jr. ("Keller"), Secretary of DAC Robert C. Lewis ("Lewis"), Marshall Pike ("Pike"), and Dennis Rowland ("Rowland").[2] Plaintiff did not respond to defendants' motion. In this posture, these matters are ripe for adjudication. For the following reasons, the court grants defendants' motion.

---

[1] Effective 1 January 2012 the State of North Carolina reorganized and consolidated a number of executive agencies. The Department of Correction was subsumed into the Department of Public Safety and is now the Division of Adult Correction. See N.C. Gen. Stat. §§ 143B-600(a)(1); -700 et seq.

[2] Rowland previously was employed as the Superintendent of Polk Correctional Institution.

## STATEMENT OF THE CASE

On August 3, 2010, plaintiff, a state inmate, filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging defendants violated his rights pursuant to the Eighth Amendment to the United States Constitution when they placed him on High Security Maximum Control ("Hcon")[3] status and housed him in solitary confinement for more than one thousand one hundred two (1,102) days. Plaintiff also alleges that his extended placement in solitary confinement resulted in back pain, neck pain, vision impairment, an psychological issues. Finally, plaintiff alleges that defendants violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As relief, plaintiff requests release from solitary confinement, as well as nominal, compensatory, and punitive damages. Plaintiff subsequently filed a motion to appoint counsel, which was denied.[4]

On October 10, 2011, defendants moved for summary judgment arguing that plaintiff failed to state a valid claim pursuant to § 1983. Alternatively, defendants assert the defense of qualified immunity. Plaintiff requested an extension of time to respond to defendants' motion. The court granted plaintiff's motion, but plaintiff did not file a response.

---

[3] DAC Policy and Procedure, Chapter C, Section .1700, defines Hcon as "is the isolation of close custody felon inmates that pose, or continue to pose, an imminent threat to the life or health of other inmates or staff or the isolation of inmates that otherwise pose a serious threat to the security and integrity of a prison facility."

[4] The court notes that plaintiff, in his previous motion to appoint counsel, complained that he required counsel because his jailhouse lawyer had been transferred. However, plaintiff filed several pleadings subsequent to the alleged transfer of his jailhouse lawyer.

2

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Plaintiff is affiliated with the "CRIPS," which is a Security Threat Group ("STG"). Pike[5] Aff. ¶ 4. On April 10, 2007, plaintiff and fellow inmate Speaks ("Speaks") assaulted inmate M. Littlejohn by hitting, kicking, and cutting him. Id. Prison staff issued direct orders to "break it up," but plaintiff failed to comply. Id. Staff then intervened and additional inmates became involved. Id. Several staff members sustained cuts on their necks, shoulders, and faces. Id. Additionally, one staff member was knocked unconscious, and had to be transported by helicopter to Carolina Medical Center. Id. ¶¶ 4, 5 and Ex. A.

Following the incident, plaintiff was found guilty of three disciplinary charges: (1) assault on staff (A3); (2) assault of a person (A4); and (3) disobeying a direct order (C3). Id. ¶ 7 and Ex. D. On May 4, 2007, pursuant to DAC policy and procedure Chapter C, Section .1701(a)(1), plaintiff was placed on Hcon status.[6] Id.; DAC Policy and Procedure, Chapter C, Section .1701(a)(1).[7]

In accordance with DAC policy, plaintiff received periodic reviews by the Director's Classification Committee ("DCC"). Pike Aff. ¶ 8. Plaintiff's first custody classification hearing was held on October 10, 2007, during which the DCC decided to continue plaintiff on Hcon status because he had incurred additional rule violations in the intervening period. Id. ¶ 9. The DCC

---

[5] Defendant Pike submitted an affidavit in support of defendants' motion for summary judgment. Pike is employed by the DAC a Manager of Classification and Technical Support of the Division of Prisons. Pike Aff. ¶ 2.

[6] DAC Policy and Procedure, Chapter C, Section .1200, Conditions of Confinement establishes eight confinement classifications for inmates. They are (1) Maximum Control (Mcon); (2) Death Row (Drow); (3) Intensive Control (Icon); Administrative Segregation (Aseg); (5) Protective Control (Pcon); (6) Disciplinary Segregation (Dseg); (7) Safekeeper (Skpr); and (8) High Security Maximum Control (Hcon). Pike Aff. ¶ 5.

[7] DAC policy and procedure Chapter C, Section .1701(a)(1) provides that an inmate may be placed in a high security maximum control status and assigned to a designated facility when "[t]he inmate has been found guilty of a major disciplinary infraction involving a serious assault, active or passive participation in riot or mutiny, or seizing or holding a hostage or in any manner unlawfully detaining any person against their will."

3

conducted plaintiff's subsequent custody classification review hearings on the following dates: February 26, 2008, July 8, 2008, November 9, 2008, April 3, 2009, and August 26, 2009. Id. ¶¶ 8-12. Plaintiff refused to attend his DCC reviews, and at each hearing the DCC decided to retain plaintiff on Hcon status because of his past behavior. Id. ¶ 8. On January 6, 2010, plaintiff was promoted to Mcon status. Id. ¶ 13 and Ex. D.

At some point, plaintiff had a Snellan eye examination (eye chart test), and the results reflected that he was legally blind. Stover[8] Aff. ¶ 6. On March 15, 2010, an optometrist examined plaintiff's eyes, but could not find any refractive error. Id. ¶ 7. Plaintiff then attended an appointment with an ophthalmologist, who found plaintiff's eyes structurally normal. Id. Medical staff also treated plaintiff for his alleged neck and back pain. Id. Attach.

## DISCUSSION

A. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[8] Phillip E. Stover ("Stover") submitted an affidavit in support of defendants' motion for summary judgment. Stover is employed as a contract physician with the DAC. Stover Aff. ¶ 3.

4

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

    a. Eighth Amendment

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 555 U.S. at 242.

The court first determines whether plaintiff has established a constitutional violation. In the prison context, the Eighth Amendment "protects inmates from inhumane treatment and conditions

5

while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "To demonstrate that conditions of confinement constitute cruel and unusual punishment, [an inmate] must (1) establish that prison officials acted with 'deliberate indifference' and (2) prove extreme deprivations of basic human needs or 'serious or significant' pain or injury." Smith v. Ozmint, 578 F.3d 246, 255 (4th Cir. 2009) (quoting Williams, 77 F.3d at 761).

"[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). Further, "general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. May 12, 1998).

Plaintiff complains about the duration of his Hcon status. However, the Fourth Circuit has held that the "length of time [in isolated segregation] is simply one consideration among many in the Eighth Amendment inquiry" and that "the indefinite duration of [an] inmate's segregation does not render it unconstitutional." In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (citation and quotation omitted) (finding no Eighth Amendment violation where inmates were confined in maximum custody for over three years and did not expect to be released in the foreseeable future). Accordingly, the duration of plaintiff's confinement alone does not violate the Eighth Amendment.

Plaintiff also contends that he now is legally blind due to his Hcon status because the lighting in his cell was inadequate and because he was deprived of sunlight. Plaintiff, however, has not provided sufficient evidence to establish that lack of light caused his alleged blindness. Although

the record reflects that plaintiff failed the Snellan (eye chart) test, it also reflects that the test "requires total cooperation from the patient and can be easily feigned." Stover Aff. ¶ 6. Further, after the Snellan exam, plaintiff was examined by both an optometrist, who did not find any refractive error, and an ophthalmologist, who found plaintiff's eyes to be structurally normal. The record further reflects that plaintiff generally was allowed out of his cell for one hour per day five days per a week for recreation, but that he often refused to participate. Pike Aff. ¶ 14, Exs. B, E; see e.g., Harrison v. Lee, No. 7:08cv00062, 2008 WL 467361, at *3 (W.D. Va. Feb. 19, 2008) (finding no constitutional violation where segregated inmate alleged he was permitted only one hour per week of "out of cell" time).

As for plaintiff's assertion that his Hcon status caused his alleged psychological issues, depression and anxiety typically do not constitute the "extreme deprivations . . . required to make out a conditions-of-confinement claim." In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d at 472 (citation and quotation omitted). Moreover, the evidence reflects that plaintiff was seen by both a psychiatrist and psychologist in response to his alleged psychological issues in relation to his placement on Hcon status. See Williams v. Branker, 462 F. App'x 348, 354 (4th Cir. Jan. 20, 2012) ("The fact that the conditions to which [plaintiff] was subjected aggravated his mental illness is an unfortunate but inevitable result of his incarceration.").

Finally, plaintiff offers only conclusory allegations of pain in his neck, back, and joints. Conclusory allegations are insufficient to state a constitutional claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Even if plaintiff could state a constitutional claim, the evidence in the record reflects that plaintiff has received medical attention for his complaints of pain.

7

Based upon the foregoing, the court finds that defendants were attentive to plaintiff's physical and mental health needs while on Hcon status. Plaintiff has failed to demonstrate that defendants had actual knowledge of risks to his physical or mental health and that they acted with indifference to the alleged harm. Rather, the court finds that plaintiff's placement on Hcon status was designed to limit his ability to inflict harm on others, rather than to cause physical or mental harm. See, e.g., Williams, 462 F. App'x at 355. Moreover, plaintiff fails to demonstrate that he was deprived of basic human needs such as food, shelter, or medical attention. See Farmer, 511 U.S. at 832. Finally, the court finds that plaintiff's placement on Hcon status was "rationally related to the furtherance of the legitimate end of prison security," and plaintiff has not demonstrated otherwise. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d at 469-70. Thus, plaintiff has failed to satisfy the subjective prong of the Eighth Amendment test. Because plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, he has not established a constitutional violation and defendants are entitled to qualified immunity.

    b.    Due Process

Plaintiff alleges that he was confined in administrative segregation in violation of the Due Process Clause. In order to prevail on either a procedural or substantive due process claim, an inmate first must demonstrate that he was deprived of "life, liberty or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). Generally, confinement in segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. See United States v. Daniels, 222 F. App'x 341, 342 n.* (4th Cir. Mar. 30, 2007); Williams v. Johnson, No. 7:10-cv-00377, 2010 WL 3395700,

8

Case 5:10-ct-03144-FL Document 37 Filed 08/22/12 Page 8 of 10

at *2 (W.D. Va. Aug. 26, 2010) ("An inmate does not have a constitutional right to be placed in a specific security classification or facility, and custodial classifications do not create a major disruption in a prisoner's environment."). However, some courts have concluded that inmates may enjoy a liberty interest in avoiding solitary confinement or isolation. Syndor v. Mahon, No. 3:10cv780, 2012 WL 604039, at *n4 (E.D. Va. Feb. 23, 2012). Nevertheless, to establish a due process claim, a plaintiff must allege facts that suggest his solitary confinement was atypical as compared to ordinary prison life. See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997),

As discussed above, plaintiff has not alleged conditions of confinement which were atypical as compared to ordinary prison life. See e.g., id. (holding that where inmates were kept in solitary confinement for six months, and that the cells were unsanitary, vermin-infested, flooded from the toilets on the floor above, kept at very high temperatures, and they received cold food in small portions, only infrequently received clean clothes and linens, and were not allowed to participate in exercise, education, or religious activities at the prison, these conditions "were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."). Further, the record reflects that plaintiff was placed on Hcon status due to his disciplinary convictions and that he received periodic custody classification review hearings, which plaintiff refused to attend his review hearings. Based upon the foregoing, the court finds that plaintiff's due process rights have not been violated.[9]

---

[9] The court notes that plaintiff does not assert a due process claim in relation to his disciplinary proceedings which resulted in commitment to Hcon status and solitary confinement.

9

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 32) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 21st day of August, 2012.

/s/
LOUISE W. FLANAGAN
United States District Judge

10